**Orval E. HILTON, Libelant,**

v.

**AEGEAN STEAMSHIP CO. Limited, Respondent.**

**Civ. No. 63–500.**

United States District Court
D. Oregon.
March 8, 1965.

The attorneys for the plaintiff are Pozzi, Levin & Wilson, Portland, Ore.

The attorneys for the defendant are King, Miller, Anderson, Nash & Yerke and Richard C. Helgeson, Portland, Ore.

SOLOMON, Chief Judge.

Orval E. Hilton filed this libel for damages for personal injuries he suffered as a result of the unseaworthiness of the vessel SS DEMOSTHENES. The vessel was in the repair yard of Northwest Marine Iron Works from May 12 through May 23, 1962, and in drydock for two days during this period. During the time she was being repaired at a cost of $65,-702.36, the full crew of the vessel remained aboard.

While the DEMOSTHENES was in drydock, the libelant, a boilermaker em-

ployed by Northwest Marine, was engaged in welding new steel inserts on a bulkhead between the No. 4 and the No. 5 holds. Libelant went to the main deck for a box of welding rod, using the main hatch ladder. On his return, he used an escape hatch ladder because at that time he was carrying a heavy box of welding rod. As libelant was descending the ladder, the bottom swung loose and back into the side of the escape hatch, and he was injured. The escape hatch ladder was one of the items to be repaired.

Libelant contends that the SS DEMOSTHENES was a vessel in navigation for the purpose of warranting her seaworthiness; that libelant was engaged in work traditionally performed by seamen; and that the SS DEMOSTHENES warranted her seaworthiness to libelant. Respondent denies each of libelant's contentions.

■ The principal question is whether the SS DEMOSTHENES was a vessel in navigation for the purpose of warranting her seaworthiness. The factors to be considered are "the character of the work to be done by the shipyard, the presence or absence of a crew performing the customary work of seamen on shipboard, and the consequent measure of control or lack of control by the shipyard over the vessel as a whole." Lawlor v. Socony-Vacuum Oil Co., 2 Cir. 1960, 275 F.2d 599, 604, 84 A.L.R.2d 613, cert. denied, 363 U.S. 844, 80 S.Ct. 1614, 4 L.Ed.2d 1728 (1960). The SS DEMOSTHENES was not undergoing a complete overhaul or repairs so extensive in character as to place the vessel out of maritime service; in fact, on the basis of the cost of repairs and the time required to complete them, the repairs were minor. Cf. West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); McDonald v. United States, 3 Cir. 1963, 321 F.2d 437, cert. denied, 375 U.S. 969, 84 S.Ct. 487, 11 L.Ed.2d 417 (1964). In addition, the crew was aboard and in control of the vessel during all such time.

■ I therefore find that at the time of the accident the SS DEMOSTHENES was a vessel in navigation for the purpose of warranting her seaworthiness.

■ There is no merit in respondent's contention that since the ladder was one of the items to be repaired, the doctrine of seaworthiness does not apply. Since the vessel was in active maritime service and since there was no surrender of control by the owner, the only remaining question is whether libelant was performing work traditionally performed by crew members. I find that libelant was performing such work and that he is entitled to the benefits and protection of the warranty of seaworthiness. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Lawlor v. Socony-Vacuum Oil Co., supra.

Unless the parties agree on the amount of damages to which libelant is entitled, a trial on the issue of damages will be held on Monday, April 12, 1965, at 10:30 A.M.